**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY LADARIUS JONES,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR MANUFACTURING MISSOURI, INC., et al.,<br><br>Defendants. | ) | Case No. 4:25-cv-01749-SRW |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Timothy Ladarius Jones brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, against his prior employer, Toyota Motor Manufacturing Missouri, Inc., and its parent company. The Court previously granted Plaintiff *in forma pauperis* status and directed him to file an amended complaint on a Court-provided form, in compliance with the instructions provided. [Doc. 3]. Now before the Court is Plaintiff's Amended Complaint [Doc. 4] for review under 28 U.S.C. § 1915. For the reasons discussed below, the Court will dismiss this case for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes

the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**The Amended Complaint**

Plaintiff Timothy Jones seeks money damages under Title VII from his prior employer, Defendant Toyota Motor Manufacturing. [Doc. 4]. Plaintiff was employed by Toyota Motor at a facility located in Troy, Missouri from approximately February 2024 until October 2025. *Id.* at 7. According to Plaintiff, starting in February 2025, he was subjected to discriminatory treatment and a hostile work environment based on his race. Plaintiff describes himself as a

"Black male." The alleged discriminatory conduct included retaliation, harassment, different terms and conditions of employment, and Defendant's failure "to hire [Plaintiff] on as a full team member." [*Id.* at 3-4, 7].

Plaintiff states that the Toyota Manufacturing facility where he was employed contains some machinery and equipment labeled "SLAVE" and "SLAVE 17" that he worked around as part of his daily job duties. [*Id.* at 7-8; *see also* Doc. 4-1[1] at 9-10]. Plaintiff explains that he found the labeling "humiliating, degrading, and offensive" given the "obvious racial meaning and historical association with the oppression of Black individuals in the United States." [*Id.*] Plaintiff complained to management and human resources about the labels. [*Id.* at 8; *see also* Doc. 4-1 at 13-14 (screenshot of text to unknown number about labels with response that issue should be raised with local human resources team)]. Despite these complaints, Plaintiff asserts that Defendant failed to "take appropriate corrective action" by "promptly" removing or correcting "the offensive labeling." Plaintiff alleges that the "continued presence of the labeling created an abusive" and "racially hostile environment." [*Id.*]

Plaintiff also claims that he was subjected to unequal treatment compared to similarly situated employees. He alleges that he was unfairly blamed for workplace incidents that were negatively reflected on his employment evaluations and ultimately used to justify disciplinary actions against him. [*Id.*] Plaintiff provides three (3) examples.

First, Plaintiff asserts that he was incorrectly blamed for upsetting a cleaning employee for an incident that involved removal of a lunch container from a work refrigerator. [*Id.* at 9; *see also* Doc. 4-1 at 12 ("Written Reminder" issued to Plaintiff regarding "inappropriate behavior

---

[1] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

towards a … cleaning staff member" and for not reporting "absences for leave from 1/24-02/02")]. Plaintiff later learned which employee was actually responsible for upsetting the cleaning employee and that person was Caucasian. Plaintiff alleges that Defendant "did not initially identify or discipline" that employee, until Plaintiff "later informed management of what actually occurred." Then, Defendant "allegedly disciplined" the responsible employee. According to Plaintiff, this incident demonstrates "selective discipline and unequal treatment." [*Id.*]

Second, Plaintiff states that an incident occurred on the production line, witnessed by multiple employees. According to Plaintiff, his employer "claimed" that another employee attempted to fight him but Plaintiff "disputes this characterization." Plaintiff does not explain his own version of this incident, instead he just states that Defendant "failed to properly address the conduct of the other employees involved" and that Defendant "relied on the incident" to give Plaintiff a negative employment evaluation. [*Id.*]

Third, Plaintiff alleges that a "team leader" asked him "to steal the team leader's car." [*Id.* at 10]. Plaintiff reported the inappropriate request to management who investigated and found the allegation substantiated. Despite the confirmation, Plaintiff complains that the team leader was not terminated or "appropriately" disciplined, and that this incident demonstrates that supervisors are treated differently.

Finally, Plaintiff alleges that he experienced retaliation after repeatedly reporting these incidents of "workplace misconduct and discriminatory conditions" to human resources and corporate investigators. Plaintiff states that he received "negative evaluations referencing alleged conflicts with coworkers" and even though these incidents "were later determined to be

unsubstantiated," the negative evaluation remained on Plaintiff's record, affecting his "employment opportunities and advancement." [*Id.*]

Plaintiff states that he repeatedly raised concerns about workplace issues including discrimination, harassment, and misconduct by supervisors through proper reporting channels, but he received no relief. [*Id.* at 7]. In June 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). [*Id.* at 3]. The EEOC issued a Notice of Right to Sue to Plaintiff on August 25, 2025. [*Id.* at 11; *see also* Doc. 4-1 at 2-4].

Plaintiff's Amended Complaint brings four (4) counts for relief under Title VII: "Race Discrimination," "Hostile Work Environment," "Retaliation," and "Unequal Terms and Conditions of Employment." [*Id.* at 11-13]. Plaintiff attached some additional exhibits to the Amended Complaint that were not referenced in his factual allegations, including an unlabeled and unreadable printout of a calendar [Doc. 4-1 at 15-16] and an email from an "Absence Management" advisor concerning Plaintiff's "approved" claim [*Id.* at 17-18].

**Discussion**

Based on a careful review and liberal construction of the pleadings, the Court finds that Plaintiff's Amended Complaint fails to meet the pleading requirements for stating Title VII claims of discrimination, hostile work environment, and retaliation. Plaintiff has not adequately alleged facts in support of his claims, to withstand review under 28 U.S.C. § 1915(e)(2). As such, this case will be dismissed for failure to state a claim upon which relief may be granted.

## I. Race Discrimination and Unequal Treatment Claims Fail

Title VII makes it unlawful for an employer to discriminate against an individual because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of Title VII discrimination, a plaintiff must show that he: (1) is a member of a

protected class; (2) was meeting his employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of his protected class. *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citation omitted).

Plaintiff has alleged that he is a member of a protected class, but he fails to provide facts sufficient to establish the other requirements for stating a Title VII claim. As to the second requirement, Plaintiff never asserts that he was meeting his employer's job expectations. In fact, an exhibit attached to the Amended Complaint indicates that he failed to follow workplace policy when he failed to report a leave of absence to his group leader. [*See* Doc. 4-1 at 12].

Plaintiff also fails to establish the third requirement—that he suffered an adverse employment action. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman*, 728 F.3d at 804 (citation omitted). Plaintiff states that he received negative employment evaluations and that this negatively affected his "employment opportunities and advancement."[2] [Doc. 4 at 10]. However, this conclusory allegation fails to establish that Plaintiff suffered a tangible change in his working conditions. Plaintiff does not allege that his pay or benefits changed, and a negative performance review alone is not enough. *See Rebouche v. Deere & Co.*, 786 F.3d 1083, 1088 (8th Cir. 2015) ("[A] negative performance review on its own does not constitute an 'adverse

[2] According to the Amended Complaint, Plaintiff's employment with Toyota Motor ended in October 2025. [Doc. 4 at 3]. However, Plaintiff does not make any allegations regarding termination, and even if he did, they would not be properly before the Court because Plaintiff filed his EEOC Charge of Discrimination in June 2025, before his employment ended. [*Id.*]

employment action' ... unless the review was relied on in making promotion [, demotion, or termination] decisions about the employee.")

The only factual support that Plaintiff provides that could be interpreted as a "material employment disadvantage" is his single, unsupported statement that Defendant failed to hire him as a "full team member." [Doc. 4 at 4]. To establish a prima facie case of Title VII discrimination in the failure-to-hire context, a plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for an open position; (3) was denied that position; and (4) that the employer filled the position with a person not in the same protected class. *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011). Plaintiff here never alleges that he was qualified to be a full team member, he doesn't explain when he was denied the position, and he doesn't allege that the person who received the position was not in his same protected class. In addition, Plaintiff never asserts that he did not receive the "full team member" position due to any negative evaluations in his employment record.

Finally, Plaintiff also fails to establish that he was treated differently than similarly situated employees who were not members of his protected class. Plaintiff details only one workplace incident that pertained to a person of a different race. Plaintiff states that he was incorrectly blamed for upsetting a cleaning person who was emptying out a workplace refrigerator. According to Plaintiff, when he later learned who was responsible for the inappropriate behavior and he informed the Defendant that it was a Caucasian employee, Defendant "allegedly disciplined" the employee. [Doc. 4 at 9]. Accepting Plaintiff's allegations as true, there is no disparate treatment based on race here. Defendant incorrectly blamed Plaintiff but disciplined the correct employee once that employee was identified. Nothing supports the assertion that the non-Black employee was treated more favorably. There is also no

evidence suggesting that Plaintiff and the guilty employee were similarly situated employees. Furthermore, as for Plaintiff's factual allegations concerning a coworker attempting to fight him and a team leader asking him to steal his car, these alleged incidents do not establish any disparate treatment based on race either. Overall, the Amended Complaint is void of any allegations that a similarly situated employee of a different race or color was treated more favorably than Plaintiff. Plaintiff's conclusory statement that he was subjected to different terms and conditions of employment is not enough to establish disparate treatment.

Although the Court must accept Plaintiff's factual allegations as true, it "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). In other words, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (internal quotations and citations omitted).

Therefore, Plaintiff fails to provide facts indicating that he was meeting his employer's legitimate job expectations, that he suffered an adverse employment action, or that Defendant treated other non-Black employees differently. Because Plaintiff fails to establish the pleading requirements for a Title VII discrimination claim, this claim must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

## II. Hostile Work Environment Claim Fails

Similarly, to state a hostile work environment claim under Title VII, a plaintiff must establish five elements, including that: (1) he is a member of a protected group; (2) he was the subject of harassment; (3) there was a causal nexus between the harassment and protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his

employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Johnson v. United States Postal Serv.*, 2025 WL 752247, at *1 (8th Cir. Mar. 10, 2025) (citing *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018)).

In this case, Plaintiff has established that he is a member of a protected group and that Defendant failed to take prompt and remedial action after Plaintiff complained about the "SLAVE" labels on the workplace machinery. Liberally construing the allegations, Plaintiff asserts that the "SLAVE" labels constitute harassment and that the harassment relates to historical inequities in race and as such, has a nexus to his protected group status.[3] However, even accepting this as true, Plaintiff fails to establish that the labels affected a term, condition, or privilege of employment.

According to the Supreme Court, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). An example of "severe or pervasive" conduct is when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). A court should look at the totality of the circumstances to determine if a work environment rises to the level of impermissible discrimination. *Id.* at 21-23. In determining whether the conduct was severe or pervasive, courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically

---

[3] The Court notes that the "master" and "slave" terminology has been used for decades in the field of engineering to describe the relationship between various components, process controls, and resources branches. For machinery hardware, a "master" device serves as the hub and the "slave" device behaves according to its directives. *All About Circuits*, https://www.allaboutcircuits.com/news/how-master-slave-terminology-reexamined-in-electrical-engineering/ (last visited Aug. 25, 2026).

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Plaintiff here states that "SLAVE" labels are on Defendant's machinery and equipment at the Troy, Missouri facility. Plaintiff finds the labels "humiliating, degrading, and offensive" and alleges that they create an "abusive" work environment. [Doc. 4 at 8]. However, these allegations are not enough to establish that a reasonable person would find Defendant's workplace environment hostile or abusive. Although Plaintiff provides a photo of one "SLAVE" label, [Doc. 4-1 at 10], and states that the labels are "visible within the work environment," [*id.* at 7], he does allege that the labels are numerous in the facility or that the labels are large and unavoidable. In addition, there are no physical threats associated with the labels, they were not directed at any specific workers, and Plaintiff does not assert that their existence interfered with his work performance. Furthermore, nothing in Plaintiff's allegations suggest that these labels create a racially hostile environment "permeated with discriminatory intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65.

It is not enough for Plaintiff to state that the labels humiliated him, in order to find that a reasonable person would consider the circumstances severe or pervasive enough to affect a term or condition of employment. *See also Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) (noting the "high bar" for a cognizable hostile work environment claim that must be satisfied for conduct to rise to the level of sufficiently severe or pervasive). Plaintiff's allegations do not amount to the "extreme" conduct required "to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). For these reasons, Plaintiff's hostile work environment claim under Title VII also fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

## III. Retaliation Claim Fails

Finally, Title VII also prohibits retaliation against an employee, when that employee "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of Title VII retaliation, a plaintiff must show that: (1) he engaged in protected conduct; (2) he suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. *Jackman*, 728 F.3d at 804 (citation omitted).

In this case, the Court can discern no protected conduct engaged in by Plaintiff for which he allegedly suffered retaliation. Plaintiff states that he complained to management about not being the person responsible for upsetting a cleaning employee, he disputed management's characterization of an employee who attempted to fight him, and he reported his team leader's request to steal his car. None of these incidents involve conduct made unlawful by Title VII. Furthermore, as discussed above, Plaintiff establishes no materially adverse employment action that he suffered as a result of any alleged retaliation. Plaintiff has not alleged enough facts to establish a prima facie case of Title VII retaliation. This claim must also be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

## Conclusion

Plaintiff's Amended Complaint must be dismissed for failure to state a claim because it does not allege sufficient facts to support Title VII claims of racial discrimination, hostile work environment, or retaliation. Therefore, this case will be dismissed without prejudice. 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that this case is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 31st day of August, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE